LORRAINE TURPENTINE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34503.   Promulgated July 31, 1930.

*A. B. McMullen, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, for the respondent.

OPINION.

ARUNDELL: No evidence was offered by petitioner to support its allegation that respondent erred in reducing the amount of depreciation claimed by $6,537.50. Accordingly, the respondent's action is sustained.

The only point in controversy as to the amount of profit realized or loss sustained on the sale of the timber is whether the turpentine rights reserved to petitioner in the transaction had any value.

G. A. McLeod, the only witness produced by petitioner at the hearing, based his opinion that the turpentine rights had no value at the time the sale was made upon the very low price at which manufactured turpentine was then selling and because of this condition, its inability to manufacture the produce at a profit. This condition, he admitted, was only temporary. In 1922, a year before the sale was made, the turpentine privileges on the tract had a value of $400 per crop. The value of $40,381.25 for the rights determined by respondent is equivalent to about $1,400 per crop on the basis of 29 crops developed on the entire tract. This figure is regarded as excessive because of the low grade of timber on the tract, the period of time the trees had been worked prior to the sale, and the low market price for turpentine in 1923. The opinion of McLeod that the turpentine rights were valueless in 1923 can not be accepted as establishing such a fact in the presence of proof that some part of the uncut timber on the tract was worked during the years 1924 to 1929, inclusive, and a very small portion of it is still being worked. In 1922 there were about 23 crops on the tract and the petitioner

subsequently increased the number of crops to 29. In our opinion the turpentine rights had a value at the time of the sale of $400 per crop, or $11,600 for the entire tract.

The only item in dispute under the net loss issue is the amount of the loss sustained by petitioner in 1922 in the destruction by fire of its Alsace distillery. We think the evidence supports the claim of petitioner that the fire resulted in a loss of $5,000, which amount should be allowed as a deduction from gross income in 1922. If, after making this adjustment under Rule 50, the net loss sustained in 1921 is in excess of the adjusted net income for 1922, the excess amount should be carried forward and allowed as a deduction in computing net income for 1923.

*Decision will be entered under Rule 50.*